**Leo P. PORTNOY, Plaintiff,**

v.

**XTAL CORPORATION, et al., Defendants.**

No. 85 C 7212.

United States District Court, N.D. Illinois, E.D.

April 6, 1986.

Jerrold M. Shapiro, Chicago, Ill., for plaintiff.

Martha A. Mills, Cotton, Watt, Jones & King, Chicago, Ill., Corey L. Gordon, Frank R. Berman, P.C., Minneapolis, Minn., for defendants.

## MEMORANDUM OPINION ON ATTORNEYS FEES

GRADY, Chief Judge.

This is an "insider trading" case in which the plaintiff, Leo P. Portnoy, charged that the defendant, Bert B. Locke, was an "officer" of the defendant XTAL Corporation who made a short swing profit on the purchase and sale of XTAL stock in violation of 15 U.S.C. § 78p(b). Locke bought the stock for $1.04 per share and sold it less than six months later for $7.60 per share, for an alleged short swing profit of $50,-459.52. Portnoy brought this suit on behalf of XTAL Corporation after XTAL refused to bring a suit itself against Locke. XTAL contended that Locke was not an "officer" of the corporation within the meaning of the statute because he had no access to relevant inside information.

The suit was filed on August 16, 1985, and by the time of the Rule 16 conference which was held on November 19, 1985, the parties had reached a settlement. The terms of the settlement, incorporated in a written agreement, are that Locke will pay the corporation $15,000.00 ($5,000.00 in cash and the balance in $5,000.00 installments payable in February 1986 and February 1987), and Portnoy's attorneys fees will be paid by the corporation in an amount to be set by the court. All that remains to be done now is to set the amount of these fees and enter the agreed judgment order.

Mr. Jerrold M. Shapiro, counsel for Portnoy, requests the sum of $5,000.00 to cover fees and expenses ($4,792.00 in fees and $208.00 in disbursements). In support of his application, he has filed a statement of the time spent on the case, indicating that he has spent 46.25 hours, which, at what he suggests is a reasonable billing rate of $175.00 per hour, would come to $8,093.75 in fees.

In order to determine what benefit the corporation is going to receive as a result of this lawsuit, I asked counsel for the corporation to indicate what fees and expenses the corporation has incurred. I have been furnished with the affidavit of the president of XTAL, indicating that the corporation has incurred attorneys fees of $5,220.00 and expenses of $182.26, for a total of $5,402.26. In addition, the corporation entered into an agreement with the defendant Locke whereby it would pay his fees and expenses in the litigation. Pursuant to that agreement, the corporation is liable for Locke's attorneys fees in the amount of $1,781.25 and expenses of $418.73, for a total of $2,199.98. The total outlay for the corporation, therefore, is $7,602.24. Subtracting this from the $15,-000.00 which Locke has agreed to pay the corporation, that would leave $7,397.76 for the corporation, assuming Locke actually pays the $15,000.00. But from this amount, Portnoy's attorney has to be paid. If I were to allow the suggested $5,000.00, that would mean that the net to the corporation from this litigation would be $2,397.76. According to the complaint, there are 1,500,000 shares of corporate stock outstanding. The complaint does not indicate how many shares are owned by Portnoy.

Portnoy argues that the payment of Locke's fees artificially reduces the apparent net benefit to the corporation. He says that the corporation should not be paying Locke's fees and that in doing so it is violating public policy.

On the assumption that there is substantial merit to this lawsuit, there may very well be a question about the propriety of the corporation's paying Locke's fees. But the circumstances of the settlement do not strongly support the conclusion that either side thinks much of plaintiff's case. In ¶ 3.2 of the settlement agreement, the parties recite that "... the total amount which [XTAL] would stand to recover even if Portnoy prevailed on the merits in this litigation would be less than the amount it must expend in legal fees and management time and resources should this litigation proceed." It is hard to believe that the cost of defending this single issue case—was Locke an "officer" of XTAL—could equal or exceed the $50,459.52 prayed for in the complaint. On the other hand, the realty of modern litigation is that attorneys fees accrue with amazing speed. Very little has been done in this case other than the filing of Portnoy's complaint and Locke's answer. Locke's deposition was not even taken. Yet, Mr. Shapiro, the attorney for Portnoy, has, according to his fee petition, spent 46¼ hours on the case through December 3, 1985. He suggests that a "lodestar" of $8,093.75 would be appropriate for this amount of time, although he has agreed to "discount" his fee to $4,792.00 in the interest of facilitating the settlement. If the prosecution of the case could have generated that much attorney time, then it seems to me that Portnoy was on notice that a similar amount of time might be spent by the attorneys for the corporation in defense of the case. If $5,000.00 is reasonable for Portnoy's legal expense, he had no reason to think that something on that order would not be incurred by the corporation as a legal expense. Therefore, when Portnoy agreed to settle the case for $15,000.00, he was saying that the corporation should settle for a net benefit of about $5,000.00—$15,000.00

less his attorneys fee and a presumably comparable fee to be paid by the corporation. In short, the case is being settled for nuisance value, and both sides know that. In view of this fact, I see nothing improper about the corporation picking up Locke's legal expense. If the likelihood of proving that Locke violated the statute is as slight as this settlement would indicate, there would seem to be no necessary conflict between the interest of Locke and that of the corporation. Certainly it is in the interest of the corporation to shield a valued employee from the expense of defending an unmeritorious lawsuit related to his employment. That may be the situation here. It is therefore appropriate to consider Locke's fees in computing the net benefit to the corporation.

Returning to the question of what amount should be awarded Portnoy as a reasonable attorneys fee, it seems clear that $4,792.00 would be excessive. We have already seen that the benefit to the corporation from this lawsuit is almost negligible.[1] There was nothing difficult about the work done by Mr. Shapiro, and his suggestion that his time was worth $175.00 an hour for the work he did in this case is rejected. This is the kind of rate the court might consider as compensation for time spent by lead counsel in the trial of a complicated case. It is not a rate appropriate for the letter writing and telephoning which makes up the bulk of the 46¼ hours claimed by Mr. Shapiro. Much of the time claimed is merely clerical—e.g., 1½ hours on August 15, 1985, for filing the complaint and arranging for service by mail; ½ hour spent on August 20 and August 21, 1985, "reviewing" the return receipts indicating service by mail on the defendants. Approximately 8 hours time is claimed for legal research, which is hard to understand in light of Mr. Shapiro's apparent expertise in this area of the law.[2]

1. One wonders about the benefit to Portnoy himself. The value of his shares in the corporation is obviously not affected by the small settlement here, nor would that value have been measurably enhanced by recovery of the entire $50,459.52 sought in the complaint.

2. One of the exhibits to the complaint is a letter to Mr. Shapiro from counsel for XTAL, explaining XTAL's refusal to institute suit against Locke and remarking that "as members of this firm have had prior correspondence and dealings with you relative to other situations involv-

This case is another of the daily examples of why it rarely makes sense to compute legal fees according to the "lodestar" method of multiplying hours times hourly rates. Both the number of hours and the hourly rates claimed by the applicant are frequently excessive. Certainly that is the case here. Portnoy has offered to "discount" the fee he says he would be entitled to on a lodestar basis, but the result is no bargain when viewed in light of all the circumstances.

The court will allow plaintiff $2,000.00 as attorney's fees and reimbursement of $208.00 for costs advanced. This sum of $2,208.00 will be paid from the judgment proceeds as provided in the judgment order entered this date.

ing § 16(b) of the Securities Exchange Act of 1934, we are assuming that you indeed are familiar not only with the Statute and Regulations issued thereunder, but the interpretations placed thereon by various federal courts throughout the nation. With this knowledge, we presume you will concur with our conclusion that there is no liability on the part of Mr. Locke to XTAL Corporation."